E-FILED
Tuesday, 06 July, 2010 12:58:44 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JANICE DRAPER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  06-3138 |
| | ) | |
| TIMOTHY MARTIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendants' Motion for Summary Judgment as to All Counts of Plaintiffs' Complaint (d/e 48) and accompanying Memorandum of Law in Support of Motion for Summary Judgment (d/e 54) (Defendants' Memorandum).  Plaintiffs Janice Draper, Brad Clearwater, and Julie Neposchlan are former employees of the Illinois Department of Transportation (IDOT).  They filed the instant two-count Complaint (d/e 1) pursuant to 42 U.S.C. § 1983, alleging that Defendants violated Plaintiffs' Constitutional rights in terminating their employment with IDOT.  Count I alleges that Plaintiffs' employment with IDOT was terminated based on political considerations in violation of the First

1

Amendment.  Count II alleges that Plaintiffs were denied their property interest in their positions without due process of law.  Defendants assert that they are entitled to summary judgment on all of Plaintiffs' claims.  For the reasons set forth below, Plaintiffs' claims are barred by the applicable statute of limitations, and therefore, summary judgment in favor of the Defendants is appropriate.

## BACKGROUND

In ruling on a motion for summary judgment, the Court may not weigh the evidence, but must determine whether there is a genuine issue of material fact that warrants trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must view the evidence in the light most favorable to the nonmoving party, here the Plaintiffs, and must draw all reasonable inferences in Plaintiffs' favor.  See id. at 255.  Because this case is resolved on statute of limitations grounds, the Court limits its recitation of facts to those pertinent to this issue.

In November 2002, Democrat Rod Blagojevich was elected Governor of Illinois.  The preceding three Governors of Illinois had been affiliated with the Republican party.  Blagojevich took office in January 2003, and appointed Defendant Timothy Martin as the Secretary of IDOT.

Defendant Martin served as the Secretary of IDOT from February 2003, through January 2007.[1]

Defendant Michael Stout worked for IDOT from 1979 until 1986, at which point he left IDOT to take a job with the Teamsters union, which he held until 1997. In February 2003, Stout was hired by IDOT on a contract basis. Stout's primary responsibility was to gather facts to aid IDOT in determining whether personnel rules were broken when eleven IDOT employees took voluntary reductions from Rutan-exempt positions to Rutan-covered positions immediately before or immediately after the November 2002, gubernatorial election.[2] Stout's contract ended in June

---

[1]Defendants assert that Defendant Martin is no longer the Secretary of IDOT and thus, current IDOT Secretary Gary Hannig should be substituted as a Defendant in his official capacity under Fed. R. Civ. P. 25(d). Defendants' Memorandum, p. 4, n.1. Martin is sued in his official capacity for matters concerning injunctive and declaratory relief and in his individual capacity for matters concerning compensatory and punitive damages. Complaint, ¶ 2. Thus, IDOT Secretary Gary Hannig, in his official capacity, is substituted as the Defendant as to the claims alleged against Defendant Martin in his official capacity. Defendant Martin remains a Defendant in his individual capacity.

[2]In Rutan v. Republican Party of Illinois, the Supreme Court held that political affiliation generally is not a proper basis for state employment decisions, although political affiliation may be an appropriate consideration for certain positions that involve either policy making or access to confidential information. Rutan, 497 U.S. 62, 65-66 (1990). After the Rutan decision, the State of Illinois categorized state jobs as either "Rutan-covered" or "Rutan-exempt." The positions for which political affiliation could not be considered in making employment decisions were categorized as Rutan-covered. The policy making and confidential positions for which political affiliation could be used in making employment decisions were categorized as Rutan-exempt.

2003.  From June 16, 2003, until November 1, 2004, Stout was employed with IDOT as the Deputy Director of the Bureau of Finance and Administration.  Stout is currently the Director of Traffic Safety for IDOT, a position he has held since December 1, 2004.

Defendant Scott Doubet began working for IDOT on February 1, 2004.  He was the Bureau Chief of Personnel Management at IDOT from February 2004, through April 24, 2009.  Defendant Robert Millette worked for IDOT from February 2003, until September 2005.  At all relevant times, Millette was IDOT's Director of Finance and Administration.  Defendant Robin Black was Martin's Chief of Staff at all relevant times.

Defendants contend that, as the end of fiscal year 2004 approached, the State of Illinois was confronted with serious budgetary challenges. Defendants' Memorandum, p. 7, Defendants' Undisputed Material Fact No. 17.  Plaintiffs dispute this statement; however, Plaintiffs' response focuses only on IDOT and does not establish that the State of Illinois was not faced with serious budgetary challenges at the relevant time period.  Plaintiffs' Response to Defendants' Motion for Summary Judgment (d/e 66) (Plaintiffs' Response), p. 29-30.  According to Plaintiffs, because of IDOT's reliance on the Road Fund, the actions in question in the instant case were

not budget-driven.

Plaintiffs do not dispute, but rather deem immaterial, the following facts.  In early 2004, the Illinois Office of Management and Budget (OMB) proposed a budget for fiscal year 2005 that focused on fiscal discipline.  The 2005 budget included widespread reductions in administrative costs and government bureaucracy.  A key component of the 2005 budget was a significant reduction in the State's workforce.  OMB budgeted for 61,000 full-time equivalent positions for 2005 in agencies under the Governor. This represented a decrease of 2,300 funded positions across numerous state agencies.  The 2005 budget instructed IDOT to streamline operations and improve efficiency by consolidating functions and reorganizing operations. "OMB directed IDOT to reduce its headcount by 190 personnel compared to the authorization for Fiscal Year 2004," although an anticipated merger involving 24 employees of the Illinois Commerce Commission rail staff resulted in an actual need to reduce 166 IDOT positions.  Defendants' Memorandum, p. 8, Defendants' Undisputed Material Fact No. 21 & n. 5. Plaintiffs concede that IDOT's authorized headcount for Fiscal Year 2004 was 6,319, and, pursuant to OMB directive, the recommended headcount for Fiscal Year 2005 was 6,149, a difference of 170 positions.

According to Defendant Martin, in response to OMB's directive, IDOT implemented a Material Reorganization.  Plaintiffs respond that IDOT had not developed a financial analysis of savings to be gained from a material reorganization and the actual purpose of the reorganization was to create vacancies to be filled by a common scheme to control state employment by the Office of the Governor.  Plaintiffs argue that the Material Reorganization was a cover-up or pretext for an over-arching scheme to reward loyalists of the newly elected Blagojevich administration and eliminate non-supporters.  Defendants assert that a total of 104 positions, including those of the Plaintiffs, were abolished at IDOT pursuant to the Material Reorganization.  Plaintiffs again respond that the reorganization was pretextual, but they do not identify evidence to contradict the assertion that a total of 104 positions, including those of the Plaintiffs, were abolished at IDOT.

The parties agree that Defendant Martin had the ultimate decision-making authority to approve or disapprove the positions chosen for elimination.  Defendants' Memorandum, p. 10, Defendants' Undisputed Material Fact No. 27; Plaintiffs' Response, p. 13.  The parties further agree that OMB did not provide any specific instruction regarding the way in

which IDOT should accomplish the headcount reduction.  However, the headcount reduction was not to affect the efficiency and functioning of the agency negatively.  Defendants' Memorandum, p. 18, Defendants' Undisputed Material Fact No. 54; Plaintiffs' Response, p. 13-14. Defendant Martin directed Defendant Millette to plan and implement the headcount reduction.  Defendants' Memorandum, Ex. 45, Affidavit of Robert Millette, ¶ 4.  Defendants Stout and Doubet reported to Millette and assisted him in developing a proposal for reduction.  Id., ¶ 8.  According to Defendants, Stout and Doubet, in concert with certain organizational leaders and Defendant Martin, "were responsible for making suggestions regarding which positions could be abolished without having a detrimental effect on the agency's ability to provide services."  Defendants' Memorandum, p. 22, Defendants' Undisputed Material Fact No.69.  While Plaintiffs characterize this fact as disputed, they fail to identify evidence to contradict the scope of Stout and Doubet's responsibilities in this regard. See Plaintiffs' Response, p. 61-62.  Accordingly, the Court views Defendants' Statement of Material Fact No. 69 as undisputed.

Defendants assert that "[t]he decision-making process was fluid, involving numerous proposals, suggestions, and revisions up until the final

written notices of abolished positions were mailed" and that "the final written notices were mailed between May 24, 2004 and June 1, 2004." Defendants' Memorandum, p. 18, Defendants' Undisputed Material Fact No. 55. Plaintiffs characterize these facts as disputed; however, neither their response nor the evidence cited to support the response contradicts that the decision-making process was fluid up until the final written notices were mailed or that these notices were mailed between May 24, 2004, and June 1, 2004. Plaintiffs' Response, p. 49-50.

Defendants assert that, on February 6, 2004, Defendant Millette provided Martin with a memorandum outlining two alternative plans for responding to OMB's directive, Plan A and Plan B. Defendants' Memorandum, p. 23, Defendants' Undisputed Material Fact No. 71. While Plaintiffs characterize this fact as disputed, they concede that Plan A and Plan B existed and they fail to identify evidence disputing the date the plans were presented. The parties agree that, ultimately Plan A, which proposed eliminating 202 incumbent positions, and Plan B, which proposed the elimination of 160 incumbent positions, were not adopted.

Plaintiff Julie Neposchlan worked in IDOT's Office of Public Affairs' Bureau of Local Agency & Safety Programs. Defendants' Memorandum, p.

46, Defendants' Undisputed Material Fact No. 160.[3]  The Office of Public

Affairs was abolished in its entirety in the headcount reduction, and the

decision to abolish this department was made early in the process.

Defendants' Memorandum, p. 45, Defendants' Undisputed Material Fact

Nos. 157 & 158.[4]  A proposed layoff plan dated April 1, 2004, includes

elimination of six incumbent positions within the Office of Public Affairs,

including Neposchlan's.  Defendants' Memorandum, p. 55, Defendants'

Undisputed Material Fact No. 199 & Ex. 22, p. WH 004846.[5]  As of June

2, 2004, fourteen positions in the Office of Public Affairs, seven of which

were vacant, were included on a master layoff list, including Neposchlan's.

Defendants' Memorandum, Ex. 68, p. 1.

Plaintiffs Brad Clearwater and Janice Draper were employed in the

---

[3]Although Plaintiffs characterize Defendants' Undisputed Material Fact No. 160 as disputed, they do not cite evidentiary support for this claim as required by Local Rule 7.1(D)(2)(b)(2).  See Plaintiffs' Response, p. 118.  The fact is, therefore, deemed to be conceded.  Likewise other Undisputed Material Fact of Defendants', which are not contested by Plaintiffs pointing to contrary evidence, are deemed conceded.

[4]Although Plaintiffs characterize Defendants' Undisputed Material Fact Nos. 157 and 158 as disputed, they argue only that the material reorganization was pretextual and do not identify evidence to contradict the Defendants' assertion.  See Plaintiffs' Response, p. 116-17.

[5]Although Plaintiffs characterize Defendants' Undisputed Material Fact No. 199 as disputed, they argue only that the material reorganization was pretextual and do not identify evidence to contradict the Defendants' assertion.  See Plaintiffs' Response, p. 146-47.

Division of Aeronautics.  Defendants' Memorandum, p. 47, Defendants'

Undisputed Material Fact No. 168.[6]  On May 20, 2004, a proposed layoff

list for the Division of Aeronautics was printed.  Defendants' Memorandum,

Ex. 129.  This list identified seven positions targeted for layoff, including

Draper's, and four positions identified as alternates, including Clearwater's.

Id.  Between May 21 and May 28, 2004, a number of e-mails and

documents were exchanged regarding positions suggested for elimination in

the Division of Aeronautics.  Defendants' Memorandum, p. 51, Defendants'

Undisputed Material Fact No. 182.[7]  As of May 26, 2004, the proposed

layoff list for the Division of Aeronautics identified six positions for layoff,

including both Clearwater's and Draper's.  Defendants' Memorandum, Ex.

38.  As of June 2, 2004, five positions in the Division of Aeronautics were

included on a master layoff list, including both Clearwater's and Draper's.

Defendants' Memorandum, p. 52-53, Defendants' Undisputed Material

---

[6]Plaintiffs characterize Defendants' Undisputed Material Fact No. 168 as disputed; however, none of the evidentiary support identified in Plaintiffs' Response contradicts the fact that Clearwater and Draper worked in the Division of Aeronautics.

[7]Although Plaintiffs characterize Defendants' Undisputed Material Fact No. 182 as disputed, they argue only that the material reorganization was pretextual and do not identify evidence to contradict the assertion that e-mails and documents were exchanged as asserted.  See Plaintiffs' Response, p. 134-35.

Fact No. 189 & Ex. 68, p. 1.[8]   Ultimately the five position from the
Division of Aeronautics that were included on the June 2, 2004, list were
abolished.   Defendants' Memorandum, p. 53, Defendants' Undisputed
Material Fact No. 190.[9]

Plaintiffs concede that Defendant Stout notified Neposchlan on May
24, 2004, that her position was being abolished and that, on the same day,
Neposchlan received a letter notifying her that her position was being
abolished.   Defendants' Memorandum, p. 104, Defendants' Undisputed
Material Fact No. 403; Plaintiffs' Response, p. 26.   A copy of the
Neposchlan notification letter is before the Court.   Defendants'
Memorandum, Ex. 118.  The letter, dated May 24, 2004, states as follows:

Dear Ms. Neposchlan:

The    Department    is    currently    undergoing    material
reorganizations.   Your position of Technical Manager III,
PW413 23-20-100-00-02, is targeted for abolishment.   The
Department  has  no  vacancies  to  offer  you  at  this  time.

---

[8]Although Plaintiffs characterize Defendants' Undisputed Material Fact No. 189
as disputed, they again argue only that the material reorganization was pretextual and
do not identify evidence to contradict the Defendants' assertion.   See Plaintiffs'
Response, p. 139.

[9]Although Plaintiffs characterize Defendants' Undisputed Material Fact No. 190
as disputed, they again argue only that the material reorganization was pretextual and
do not identify evidence to contradict that the positions were in fact abolished.   See
Plaintiffs' Response, p. 139-40.

Therefore, it is with regret that I inform you that you will be laid off pursuant to Article X, Section 2, effective close of business June 30, 2004.

Please direct any benefit questions to your administrative staff.

Id.

On June 1, 2004, Defendant Doubet and Steve Young, the Bureau Chief of Air Operations in the Department of Aeronautics, hand-delivered a letter to Clearwater, notifying him that his position was being abolished. Clearwater admits that, as of June 1, 2004, he knew his position was being abolished.[10] A copy of the Clearwater notification letter is before the Court. Defendants' Memorandum, Ex. 112. The letter, dated June 1, 2004, states as follows:

Dear Mr. Clearwater:

The Department is currently undergoing material reorganizations. Your position of Technical Manager VI, PW415 23-60-304-00-01, is targeted for abolishment. The Department has no vacancies to offer you at this time. Therefore, it is with regret that I inform you that you will be laid off effective close of business June 30, 2004.

---

[10]Although Plaintiffs characterize Defendants' Undisputed Material Fact No. 384 as disputed, they do not cite evidentiary support for this claim and their response indicates only that the fact is immaterial. The fact is supported by Clearwater's deposition testimony, and the Court deems it established. See Defendants' Memorandum, Ex. 113, p. 99-100, 102-06.

Please direct any benefit questions to your administrative staff.

<u>Id</u>.

Subsequent to his deposition, Clearwater executed an Affidavit in an attempt to clarify the record as it relates to his beliefs regarding the layoff. <u>Plaintiffs' Response</u>, Ex. 30.  Clearwater avers that he did not believe he would be laid off until it actually happened on July 1, 2004.  <u>Id.</u>, p. 1-2, ¶ 2.  Clearwater states that this belief was based on a series of facts, which the Court will address, keeping in mind that, to the extent that a party's statements in an affidavit contradict his deposition testimony, the Court generally should not consider the affidavit in ruling on a summary judgment motion.  <u>See</u> <u>Buckner v. Sam's Club, Inc.</u>, 75 F.3d 290, 292 (7th Cir.1996) ("As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony . . . .  However, supplemental affidavits can be employed to clarify ambiguous or confusing deposition testimony").

Clearwater first asserts that he did not believe he would be laid off because the notification letter erroneously referenced a Technical Manager VI position, rather than the Technical Manager V position that Clearwater

13

held.  Plaintiffs' Response, Ex. 30, p. 2, ¶ 2 A.  To the extent this assertion

contradicts Clearwater's deposition testimony that he knew that his position

was being abolished, the Court will not consider it.  Clearwater further avers

that he based his belief he would not be laid off on the following: (1)

Defendant Doubet and Young were unable to answer basic questions about

Clearwater's position and his rights; (2) Clearwater could sense that neither

Doubet nor Young had pondered Clearwater's questions; (3) Defendant

Martin answered questions on-line regarding the layoff in a way that

indicated to Clearwater that the layoff was attempted in a hap-hazard way

to leverage political budget negotiations; (4) Doubet was unable to provide

answers or documentation regarding the layoff; and (5) based on

conversations with Deputy Governor Joe Hanley, Clearwater believed that

there were a number of problems with the IDOT layoff.  Id., p. 2-4.

Plaintiffs concede that "[t]he record reflects that Ms. Draper learned

that her position was being abolished prior to June 30, 2004 . . . ."

Defendants' Memorandum, p. 99, Defendants' Undisputed Material Fact

No. 372; Plaintiffs' Response, p. 23.  Specifically, Plaintiffs concede the

following: (1) on May 25, 2004, a union representative told Draper that her

position was being abolished; (2) on or before June 15, 2004, Draper

received a letter from Defendant Doubet, dated June 1, 2004, notifying her that her position had been selected for abolishment effective June 30, 2004; and (3) on June 2, 2004, Draper communicated with Karin Smith, who confirmed that Draper's position had been selected for abolishment. <u>Defendants' Memorandum</u>, p. 99, Defendants' Undisputed Material Fact No. 372; <u>Plaintiffs' Response</u>, p. 23.   A copy of the Draper notification letter is before the Court.   <u>Defendants' Memorandum</u>, Ex. 115; <u>see also</u> <u>Plaintiffs' Response</u>, Ex. 47.  The letter states as follows:

> Dear Ms. Draper:
>
> The Department is currently undergoing material reorganizations.  Your position of Technical Manager III, PW413 23-60-304-00-01, is targeted for abolishment due to lack of work.  The Department has no vacancies to offer you at this time.  Therefore, it is with regret that I inform you that you will be laid off pursuant to Article X, Section 2, effective close of business June 30, 2004.
>
> Please direct any benefit questions to your administrative staff.

<u>Id</u>.

Draper has executed an Affidavit in which she states that, despite the letter, she did not believe that she would be laid off until it actually happened on July 1, 2004.  <u>Plaintiffs' Response</u>, Ex. 47, p. 1, ¶ 2.  Draper avers that this belief was based on the following: (1) Defendant Stout told

her on May 25, 2004, that he would try to get her name off the list of people being laid off and that there was an amended list to modify the original one; (2) she was informed by her union that the layoff would not go through because it had not been done correctly; (3) Clearwater told her, sometime after she received her notification letter, that he had received a letter from Doubet stating that there was no material reorganization plan; and (4) Young told her that she could talk to someone about filling an open position in Young's bureau; Draper talked to Sangamon County Democratic Chairman Tim Timoney about the open position, and Timoney told her that, while others had talked to him about the open position, he would try to place her in another IDOT department.

On June 24, 2004, Defendant Martin sent a memorandum regarding the layoffs to the Director of the Department of Central Management Services, identifying the positions previously selected for abolishment, including the positions held by Plaintiffs. Defendants' Memorandum, p. 62, Defendants' Undisputed Material Fact Nos. 223 & 224; Plaintiffs' Response, p. 218 (deeming immaterial, but failing to dispute Defendants' Undisputed Material Fact Nos. 223 & 224); Defendants' Memorandum, Ex. 14. All three Plaintiffs were laid off effective July 1, 2004. They filed the

instant lawsuit on June 30, 2006.  Defendants move for summary judgment

on all of Plaintiffs' claims.

ANALYSIS

Summary judgment is appropriate "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(c)(2).  A fact is material if it could

affect the outcome of the suit under the applicable law, and a dispute is

genuine where the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S.

at 248.

Defendants assert that Plaintiffs' claims are barred by the statute of

limitations.  Defendants pled this affirmative defense.  Answer (d/e 25), p.

14.  The applicable statute of limitations for Plaintiffs' claims is two years.

See Hileman v. Maze, 367 F.3d 694, 696 (7th Cir. 2004); 735 ILCS 5/13-

202.  Federal law governs the date of accrual.  Id.  The Supreme Court

instructs "that the proper focus is on the time of the discriminatory act, not

the point at which the consequences of the act become painful."  Chardon

v. Fernandez, 454 U.S. 6, 8 (1981) (per curiam) (citing Delaware State

17

College v. Ricks, 449 U.S. 250, 258 (1980)).  The Seventh Circuit has held that "[a] § 1983 claim accrues when the plaintiff knows or should know that his or her constitutional rights have been violated."  Hileman, 367 F.3d at 696  (internal quotations and citations omitted).  The Seventh Circuit has created a two-step analysis for determining the date of accrual, as set forth below.

At the first step, "[the] court must identify the injury."  Hileman, 367 F.3d at 696.  In this regard, the Seventh Circuit instructs that the "operative decision" by the state actor constitutes the moment of injury.  Id. at 698 (citing Chardon, 454 U.S. at 8); see also Kuemmerlein v. Bd. of Educ. of Madison Metro. School Dist., 894 F.2d 257, 260 (7th Cir. 1990) ("a discriminatory act occurs when a potential defendant makes a discriminatory employment decision").  At the second step, the Court "must determine the date on which the plaintiff could have sued for that injury. That date should coincide with the date the plaintiff knows or should know that her rights were violated."  Hileman, 367 F.3d at 696 (internal quotations and citations omitted).[11]

---

[11]Defendants raised the statute of limitations in a Motion to Dismiss, which the Court denied in an Opinion (d/e 24), dated November 27, 2006.  Plaintiffs urge the Court to adopt its prior holding here and deny Defendants' request for summary

Plaintiffs, citing <u>Smith v. Potter</u>, argue that no final, non-tentative employment decision had been made at the time they received their termination notices and no legitimate reorganization plan was in place. Thus, Plaintiffs contend that the notices that they received were not unequivocal.   <u>See</u> <u>Smith</u>, 445 F.3d 1000, 1007 (7th Cir. 2006).[12]   The undisputed evidence belies this claim.   The operative decision in both the First Amendment and the due process claims is the decision to terminate Plaintiffs' employment under the auspices of a material reorganization of IDOT.   The undisputed evidence reveals that the decision-making process relating to the layoffs was "fluid . . . up until the final written notices of abolished positions were mailed" and that "the final written notices were

_____

judgment on statute of limitations grounds.  The Court denied Defendants' request for a dismissal on statute of limitations grounds because the record at the motion to dismiss stage did not reveal when Plaintiffs received notice of the layoffs.  <u>Opinion (d/e 24), dated November 27, 2006</u>, p. 6-7.  As set forth below, the undisputed evidence now establishes the points at which Plaintiffs received notice.  The Court's holding on the Motion to Dismiss is inapposite.

[12]Smith involved a Title VII claim by a postal service worker.  The Court notes that, in <u>Smith</u>, the plaintiff was notified by a letter sent on October 22, 1998, that she would be terminated on November 27, 1998.  <u>Smith</u>, 445 F.3d at 1007.  The Seventh Circuit, without elaboration, held that November 27, 1998, not October 22, 1998, was the accrual date for purposes of 29 C.F.R. § 1614.105(a)(1).  <u>Id</u>.  Smith's claim was untimely even using this later date.  Given these circumstances, the Court is convinced that it must follow Supreme Court precedent outlined below rather than this undeveloped portion of <u>Smith</u>.

mailed between May 24, 2004 and June 1, 2004." <u>Defendants'</u> <u>Memorandum</u>, p. 18, Defendants' Undisputed Material Fact No. 55. Plaintiff Neposchlan's position was targeted for layoff as early as April 1, 2004. As of May 26, 2004, both Clearwater's and Draper's positions were identified for layoff. These decisions were never changed. Neposchlan received written notice of layoff dated May 24, 2004; Clearwater and Draper each received written notice of layoff dated June 1, 2004. Thus, it is clear that the injury, i.e., the decision to terminate Plaintiffs' employment, occurred by late May or early June 2004.

Turning to the second step, the Court must determine the date on which Plaintiffs knew or should have known that their rights were violated. Neposchlan received Defendants' Memorandum, Ex. 118 on May 24, 2004. Clearwater received Defendants' Memorandum, Ex. 112 on June 1, 2004. Draper received Defendants' Memorandum, Ex. 115 on or before June 15, 2004. These letters expressly inform the Plaintiffs that their positions were being abolished, that there were no vacancies available, and that they would be laid off effective close of business June 30, 2004. The letters are in no way equivocal.

In determining the date of accrual, the instant case is indistinguishable

from <u>Chardon</u>, thus, the Court addresses the facts of that case in depth.  <u>See</u> <u>Chardon</u>, 454 U.S. 6.  The plaintiffs in <u>Chardon</u> were nontenured administrators in the Puerto Rico Department of Education during the 1976-1977 school year.  On dates prior to June 18, 1977, each plaintiff was notified by letter that his appointment would terminate at a specified date between June 30 and August 8, 1977.  <u>Id</u>.  The District Court dismissed as untimely a § 1983 suit filed June 19, 1978, holding that the action accrued when the employees received the letters rather than on their termination dates.[13]  The Court of Appeals reversed, holding that the limitations period did not begin running until plaintiffs' appointments ended.  <u>Rivera Fernandez v. Chardon</u>, 648 F.2d 765 (1st Cir. 1981).

The Supreme Court granted certiorari and reversed the decision of the Court of Appeals, holding that the action accrued when the employees received the notification letters rather than on their termination dates.  The Supreme Court characterized the case as indistinguishable from <u>Ricks</u>, in that, "in each case, the operative decision was made – and notice given – in advance of a designated date on which employment terminated."  <u>Chardon</u>, 454 U.S. at 8 (<u>citing</u> <u>Ricks</u>, 449 U.S. 250).  The Supreme Court expressly

---

[13]The applicable statute of limitations under Puerto Rico law was one year.

held that "[t]he fact of termination is not itself an illegal act." Id. The Chardon Court determined that the plaintiffs were notified when they received their termination letters that a final decision had been made to terminate their appointments and mere continuity of employment following that notice without more was insufficient to prolong the life of a cause of action for employment discrimination. Id. (citing Ricks, 449 U.S. at 257).

The Seventh Circuit has explicitly interpreted Chardon "to mean that the statute of limitations runs from the date of notice, not from the date of actual termination." Kuemmerlein, 894 F.2d at 259 (citing cases). In the instant case, Plaintiffs contend that, for a variety of reasons, they had good reason to believe that they would not actually be laid off. The Seventh Circuit addressed a similar argument in Kuemmerlein, a § 1983 case which involved reverse discrimination claims alleging that defendants unconstitutionally used race as a determinative factor in decisions about teacher layoffs. Kuemmerlein, 894 F.2d at 258. The Kuemmerlein plaintiffs asserted that at the point that they received their layoff notices they were not yet irrevocably terminated, pointing to the school district's practice of rehiring fifty-four percent of teachers given layoff notices prior to the beginning of the next school year. The Seventh Circuit, recognizing

the need for a bright line rule, rejected this argument, stating as follows: "The plaintiffs' hopes of recall were not enough to prevent the start of the statute of limitations.  No matter what the chance of recall, a plaintiff's cause of action for employment discrimination stemming from a layoff decision runs from the time of notice, not from the time of actual termination." Kuemmerlein, 894 F.2d at 260; see also Ricks, 449 U.S. at 261 (recognizing "that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods" because "[t]he existence of careful procedures to assure fairness in the [employment] decision should not obscure the principle that limitations periods normally commence when the employer's decision is made").  Plaintiffs' subjective beliefs that they could personally avoid layoff or that the layoff as a whole would not go through are insufficient to delay the running of the statute of limitations.

Plaintiffs filed their Complaint on June 30, 2006.  The undisputed evidence reveals that all of their claims accrued by June 15, 2004.  Therefore, their claims are untimely under the applicable two-year statute of limitations.  Plaintiffs assert that: (1) a question of fact exists on the application of equitable tolling and (2) the discovery rule applies because

they did not learn they had suffered a wrong until after the layoffs took effect; they claim they were lied to about why they were being laid off. These arguments are unpersuasive.

Illinois tolling rules govern.  Savory v. Lyons, 469 F.3d 667, 672 (7th Cir. 2006).  According to the Illinois Supreme Court, "[e]quitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum."  Clay v. Kuhl, 727 N.E.2d 217, 223 (2000).[14]  Plaintiffs fail to identify any facts which would support a finding that equitable tolling applies.  Plaintiffs do not identify any vital information that they were unable to obtain, nor do they identify the point at which any impediment to filing suit resolved.  Plaintiffs argue as follows:

> even after the litigation was commenced the Defendants vigoursly [sic] attempted to avoid providing information to the Plaintiff [sic] in this and the Libri and Whitlow cases.  They even fought a subpoena to the Governor's Office.  The scheme

_____

[14]Several courts have recognized that the issue of whether Illinois recognizes equitable tolling appears to be unresolved because Illinois cases use the term interchangeably with equitable estoppel.  See Griffin v. Willoughby, 867 N.E.2d 1007, 1016 (Ill.App. 4th Dist. 2006) (citing Fidelity National Title Insurance Co. of New York v. Howard Savings Bank, 436 F.3d 836, 839 (7th Cir. 2006)).  Because Plaintiffs in the instant case base their tolling argument on alleged misconduct by Defendants, any distinction is irrelevant.

24

the Defendants engaged in before suit was filed made it impossible for Plaintiffs to get important information about their terminations.  They were forced to file to get answers.

Plaintiffs' Response, p. 322.  Defendants' post-filing conduct is immaterial to the tolling analysis, which in relevant part focuses on impediments to filing a lawsuit.  Furthermore, while Plaintiffs assert that they were forced to file suit in order to get answers, Federal Rule of Civil Procedure 11(b) requires a good faith basis for claims prior to filing, and again any "answers" garnered after the filing of the Complaint would be irrelevant to the tolling analysis.

Plaintiffs' discovery rule argument is equally unavailing.  Plaintiffs fail to identify any evidence to indicate that Plaintiffs discovered that their terminations violated the Constitution at some point between June 30, 2004, and the time that they filed their Complaint.  Once "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 255; see also Fed. R. Civ. P. 56(e)(2) (requiring party to "set out specific facts showing a genuine issue for trial").

Plaintiffs failed to file the instant suit prior to the expiration of the applicable statute of limitations and there is no justification for extending

the limitations period; thus, Plaintiffs' claims are barred.  Defendants are entitled to summary judgment.

CONCLUSION

THEREFORE, as set forth above, IDOT Secretary Gary Hannig, in his official capacity, is substituted as the Defendant as to the official capacity claims alleged against Defendant Martin in his official capacity pursuant to Fed. R. Civ. P. 25(d).  Plaintiffs' claims are barred by the statute of limitations, and, thus, Defendants' Motion for Summary Judgment as to All Counts of Plaintiffs' Complaint (d/e 48) is ALLOWED.  Summary judgment is entered in favor of Defendants Gary Hannig, Timothy Martin, Michael Stout, Scott Doubet, Robin Black, and Robert Millette and against Plaintiffs Janice Draper, Brad Clearwater, and Julie Neposchlan on all claims.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:  July 6, 2010

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE